**OHIO CASUALTY INSURANCE COMPANY, Movant,**

v.

**James STANFIELD, Buckeye Union Casualty Company, Respondents.**

Supreme Court of Kentucky.

March 20, 1979.

James G. Osborne, O'Hara, Ruberg, Osborne & Taylor, Covington, David B. Sloan, O'Hara, Ruberg, Osborne & Taylor, Covington, for movant.

Kevin E. Quill, Newport, Kurt Phillips, Spalding, Grause, Robinson & Arnzen, Covington, John L. Spalding, Spalding, Grause, Robinson & Arnzen, Covington, for respondents.

REED, Justice.

### I.

This case presents a question of first impression in this state. In 1970 we held in *Meridian Mutual Insurance Co. v. Siddons,* Ky., 451 S.W.2d 831, that "stacking" of uninsured motorist coverage by the named insured is permitted where there are separate policies for each vehicle insured and where the named insured has not rejected the coverage in writing. This view was confirmed in *Allstate Insurance Co. v. Napier,* Ky., 505 S.W.2d 169 (1974), and *Siddons'* construction of KRS 304.20–020 was followed in *Zurich Insurance Co. v. Hall,* Ky., 516 S.W.2d 861 (1974).

The case before us involves a single policy covering numerous vehicles. An injured employee of the named insured seeks to "stack" or pyramid the uninsured motorist coverages on all vehicles on which his employer had procured insurance. The circuit court ruled that such stacking was permissible. The Court of Appeals affirmed. We respectfully disagree and accordingly reverse for the reasons later stated.

### II.

James Stanfield, a Newport policeman, was seriously injured when an automobile driven by an uninsured motorist collided with his police motorcycle. Stanfield sued the uninsured motorist, Buckeye Union Insurance Company, the insurer of Stanfield's two personal vehicles, and Ohio Casualty Insurance Company, the motor vehicle insurer of the City of Newport.

The single policy issued by Ohio Casualty is an automobile fleet plan covering 63 vehicles, including the motorcycle operated by Stanfield, owned by the City of Newport. The policy affords public liability and property damage protection to the City of Newport. As required by our statute (KRS 304.20–020), applicable to automobile liability policies, an uninsured motorist endorsement provided coverage in the face amount of $10,000 for each person and $20,000 for each accident for a premium of $300 for all covered vehicles under this endorsement. The Buckeye Union insurance policy provided uninsured motorist coverage in a single policy in the same limits for the two vehicles personally owned by Stanfield.

The circuit court held that Ohio Casualty's policy extended uninsured motorist coverage in the amount of $630,000 as a result of the pyramiding or accumulating of the coverages and that Buckeye Union's policy offered uninsured motorist coverage in the amount of $20,000 for the same reason.[1]

The circuit court also held that Buckeye Union's insurance policy was secondary to that of Ohio Casualty which was adjudged to be the primary coverage. The trial court also adjudged that all payments made under the uninsured motorist coverage were subrogated to workmen's compensation payments, if any. As to the subrogation holding, and the holding that Ohio Casualty's coverage was primary, there is no complaint and we will not address those holdings.

### III.

A basis for permitting stacking of uninsured motorist coverage from several policies was first expressed by this court in *Meridian Mutual Insurance Co. v. Siddons,* supra. In *Siddons* we declared that KRS 304.682(1) (reenacted as KRS 304.20–020) required each automobile liability insurance policy to contain uninsured motorist coverage of $10,000 for each person and $20,000

for each accident unless rejected in writing by the named insured. In *Meridian Mutual* the insurer had issued two liability insurance policies to Siddons, the named insured in each policy. One policy covered his passenger automobile and the other covered his pickup truck. The automobile policy contained uninsured motorist coverage for which a separate premium was charged, but the pickup truck insurance policy did not mention uninsured motorist coverage nor was a premium charged. We held that since the statute plainly required *each policy* to contain uninsured motorist coverage of $10,000 and $20,000, the named insured could recover under each policy despite the fact that Siddons had paid only one premium.

Applying what it considered to be the principle of *Siddons* to the case before it, the Court of Appeals stated the issue for decision in the form of a question: "Is the distinction that the insured pays separate premiums for multiple vehicles under separate policies a distinction warranting a contrary result?" Responding to its own question, the Court of Appeals answered: "There is no reason to distinguish the single policy/separate premium situation from the separate policy/separate premium situation." It appears to us, however, that this rationale is incomplete because it neglects the significant element of the type of insured who is seeking to stack coverages. In the case under consideration an employee who did not pay the premium seeks to stack coverages contained in his employer's insurance policy. *Siddons* presented a case where the named insured who had paid the premium charged sought to stack coverages.

### IV.

We will first determine Stanfield's right to stack coverages contained in his employer's fleet policy, which is conceded to be the primary insurance. Secondly, we will de-

---

1. The trial court erroneously found that Ohio Casualty's policy covered 73 vehicles rather than 63 vehicles which it described. As this was a patent mistake, we will assume for the

purpose of this opinion that Ohio Casualty's limit of liability was determined in the correct figure of $630,000.

termine his right to stack coverages under his own policy if his actual damages compared to satisfaction received from the primary insurance necessitates resort to the secondary coverage.

### A.

Ohio Casualty urges that the number of insurance policies involved should not be completely determinative of stacking rights. We agree.

■ Ohio Casualty's policy contained the following provision:

"Persons insured

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

(b) any other person while occupying an insured highway vehicle;

and

(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above."

These policy definitions create two classes of insureds. The first class is composed of the named insured, the insured who bought and paid for the protection and who has a statutory right to reject uninsured motorist coverage, and the members of his family residing in the same household. The protection afforded the first class is broad. Insureds of the first class are protected regardless of their location or activity from damages caused by injury inflicted by an uninsured motorist.

As to the second class of insureds, however,—"other person"—it is clear that their protection is confined to damages from injury inflicted by an uninsured motorist while they are "occupying an insured highway vehicle." See *Sturdy v. Allied Mutual Insurance Co.,* 203 Kan. 783, 457 P.2d 34 (1969).

Although aided by a definite statutory definition of "insured", which is not present in the Kentucky Insurance Code, we, nevertheless, consider the well reasoned opinion of the Virginia Supreme Court written by Justice Albertis Harrison in *Cunningham v. Insurance Company of North America,* 213 Va. 72, 189 S.E.2d 832 (1972) to be applicable to the case before us. The only relevant statutory mandate in Kentucky is KRS 304.20–020 which requires that no automobile or motor vehicle liability policy be delivered or issued without uninsured motorist coverage in limits of $10,000 and $20,000 *"for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." (Emphasis supplied). It is not contended nor could we hold that the definitions of "insured" contained in Ohio Casualty's policy violate the requirements of our statute. Therefore, the contractual policy definitions in the policy with which we are concerned coincide in legal effect with the contractual and statutory definitions considered in *Cunningham, supra.*

*Cunningham* presented the extent of liability to insureds of the second class. Maryland Casualty Company in a single liability policy issued to the Commonwealth of Virginia, Department of Highways, provided uninsured motorist coverage to 4,868 state-owned vehicles which were not specifically listed on the uninsured motorist endorsement but for which separate and equal premiums of $4.00 were paid on each. This policy stated the limitation of liability as $15,000 each person and $30,000 each accident as required by the statutory law of Virginia. Cunningham, an employee of the Department of Highways, was killed while riding in a car owned by the Department. This car was involved in an accident with another car owned by an uninsured motorist. Cunningham's administratrix recovered a $40,000 judgment for his wrongful death against the uninsured motorist.

On the date of the accident, Insurance Company of North America had outstand-

ing its liability policy issued to Cunningham with stated limits of liability for uninsured motorist coverage of $15,000 each person, $30,000 each accident, and which afforded uninsured motorist coverage on three automobiles owned by the decedent for which separate and equal premiums of $4.00 were paid.

The administratrix sought to recover her $40,000 judgment from INA and Maryland. The trial court held that each company was liable to the extent of $15,000 and entered judgments accordingly. ·The administratrix and INA appealed.

The Supreme Court of Virginia held that Maryland provided the primary coverage. It also held that if Maryland's policy was sufficient to satisfy the judgment sued on, there would be no liability under the INA policy which provided only excess uninsured motorist coverage. Thus, the Court's first inquiry was addressed to whether the Maryland coverages could be stacked so as to provide sufficient coverage to satisfy the *Cunningham* judgment.

The court rejected stacking of the Maryland coverage stating:

"In the instant case the named insured was the Commonwealth of Virginia, Department of Highways. To paraphrase what was said in [*Insurance Company v. Perry, Adm'r,* 204 Va. 833, 134 S.E.2d 418 (1964)], 'the court cannot substitute the name of each of the many employees of the Virginia Department of Highways in place of that of the Department as the named insured, and thus stretch the coverage of the policy to include each such employee and all of the members of his or her household specified in the statute.'
. . .
It is conceded that Cunningham was 'occupying' a state vehicle covered by the Maryland policy when he was killed. He was not the named insured in the policy and therefore occupied the status of an insured of the second class, as defined by statute. As such he is entitled to the uninsured motorist coverage provided the specific vehicle he was using or in which he was riding as a passenger or guest.

He cannot pyramid the uninsured motorist coverage on the 4,367 other highway vehicles."

*Id.* 189 S.E.2d 835.

The court also pointed out that Cunningham did not buy the policy nor did he pay Maryland one premium or any multiple premiums. The court concluded its consideration of the stacking of the Maryland coverage with these observations:

"The purpose of uninsured motorist insurance is to provide compensation to the victim of the uninsured motorist. The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, the argument and reasoning does not apply to a permissive user of a vehicle who pays no premium and does not receive the broader uninsured motorist coverage of a named insured."

*Id.* 189 S.E.2d at 836.

The Supreme Court of Alabama in *Lambert v. Liberty Mutual Insurance Co.,* 331 So.2d 260 (Ala.1976) reached the same result on the permissive user stacking issue and approved the reasoning of *Cunningham.* The court's majority opinion authored by Justice Bloodworth rationalized the result by applying the principle of *reasonable expectations* espoused by Professor Keeton. R. Keeton, Basic Text on Insurance Law, sec. 6.3(a), at 351 (1971). The court first noted that by permitting the insured to stack his coverages it had, "simply honored the reasonable expectations of the 'named insured' that his payment of an additional premium will result in increased coverage for those falling within the definition of the 'named insured,' and where an expectation of this nature is in conflict with a limiting clause in the policy, the resulting ambiguity must be resolved in favor of the insured due to the nature of insurance contracts." *Lambert, supra,* at 263. The majority opinion further observed that since an insured of the second class was not a

party to the contract his expectations as to extent of his coverage does not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause. *Id.* at 264–65. The ruling is stated in lucid and concise language:

"Can it be seriously contended that Seaboard [the employer] expected that the $4.00 premium it paid for uninsured motorist coverage on each of its 1,699 vehicles would purchase coverage for all permissive occupants of its vehicles to the tune of $16,900,000? Clearly, such an expectation would not have been a reasonable one under the terms of the commercial fleet policy here in question. The status of Lambert (for purposes of uninsured motorist coverage) as an insured solely by virtue of his occupancy of the vehicle, is clearly distinguishable from the status of a named insured who is entitled to stack coverages by virtue of his personal payment of an additional premium for each vehicle insured under a multi-vehicle policy." *Id.* at 265.

We therefore hold that Stanfield is confined to the limits of the Ohio Casualty policy applicable to the vehicle he was using. He is as to his employer's policy an insured of the second class. He is precluded from stacking the coverages in his employer's policy.

### B.

The final issue is whether Stanfield may stack the coverages in the Buckeye Union policy. Buckeye argued on this appeal both in the Court of Appeals and before this Court that Stanfield should be able to stack the coverages of his employer's Ohio Casualty policy, the primary coverage, and then stack the coverages in the Buckeye single policy if resort to this excess insurance of Buckeye was necessitated by the extent of loss. We, therefore, will dispose of the issue in brief fashion.

Stanfield bought and paid for the coverages written by Buckeye. He was the named insured. He was an insured of the first class as to this protection. As held specifically in *Cunningham, supra,* and

*Sturdy v. Allied Mutual Insurance Company, supra,* and by necessary implication in *Lambert, supra,* Stanfield is entitled to stack the uninsured motorist coverages contained in his own Buckeye Union policy. This is consistent with the public policy of our statute requiring the provision of uninsured motorist coverage in each automobile liability policy. He paid separate premiums on separate vehicles. The principle of reasonable expectations supports his right to stack coverages under these facts.

"When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages." *Sturdy, supra,* 457 P.2d at 42.

The decision of the Court of Appeals and the judgment of the circuit court are reversed and the cause is remanded to the Campbell Circuit Court for further proceedings consistent with this opinion.

All concur, except STEPHENSON, J., who dissents in part in a separate opinion.

STEPHENSON, Justice, dissenting.

I dissent from that portion of the majority opinion which permits "stacking."

It is my view that the basic premise of permitting any "stacking" is not logical, nor is it in accord with what I consider to be the plain intent of the General Assembly as reflected in KRS 304.20–020. As I read the statute, the General Assembly intended that "each policy" contain the minimum protection of $10,000 for accidents involving uninsured motorists and did not contemplate our court indulging in intellectual gymnastics to justify increasing this minimum in the absence of a contract provision increasing this coverage by the payment of additional premiums.

The "stacking" authorized in the majority opinion is based on our holding in *Siddons.*

In *Siddons* there were two separate policies, and it was reasoned that the requirement of the statute that each policy provide for the uninsured motorist coverage justified "stacking." Although only one premium was paid, the insurance company was *entitled* to collect two premiums. Thus the real basis of *Siddons* is recovery for each premium, and this rationale is carried over to the present case. The majority opinion is, in my view, a logical extension of *Siddons*. If the rationale of "stacking" is to be based on the number of premiums paid for multiple automobile ownership, then I cannot see any significant difference between separate policies on each automobile and all automobiles in one policy if the operative factor is the number of premiums. It seems to me that the premium charged in the insurance contract for each automobile is that there is increased exposure to liability. This, to me, is a more persuasive argument than the strained interpretation that each premium entitles the "named insured" to pyramid, in the event of an accident. The majority opinion found that it was necessary to prowl around in the statute and come up with the "named insured" principle to avoid "stacking" sixty-three times. I cannot believe the General Assembly intended more than the minimum coverage, $10,000 for each accident involving an individual, and did not contemplate that the fortuitous circumstance of ownership and coverage of multiple vehicles would result in more than the minimum coverage in the insurance contract.

For example, "A", the head of a household and the "named insured," owns five automobiles, all covered in one policy and premiums paid for the minimum on each automobile. Improbable though it may be, on a given day "A" and four members of his family are operating the five automobiles and all five are involved in serious accidents, each one with uninsured motorists. Following the reasoning of the majority opinion, the other four members of the family can each recover $10,000 for a total of $40,000. "A" is permitted to stack and recover $50,000 for a grand total of $90,000. Premiums were paid only for $50,000, and no premium was paid for the additional $40,000. How would this situation logically be applied to the "paid the premium" reasoning? It is obvious to me that the "paid the premium" reasoning is faulty in the first place.

I have read Professor Keeton's principle of *honoring reasonable expectations* and fail to see how this treatise supports the reasoning in the Alabama opinion or the majority opinion. The principle is based on the premise that policy language will be construed as laymen would understand it. I am firmly convinced that the average layman would clearly understand that the payment of an uninsured motorist premium for each vehicle was reasonable and clearly understandable and such provisions were not contemplated by Professor Keeton in his treatise as being ambiguous and obscure.

*Sturdy,* relied upon the majority opinion, recites the "general principles of indemnity that amounts of premiums are based on amounts of liability" to justify "stacking." I agree with this general principle; however, the example given above illustrates that this principle militates against the principle of "stacking."

I would overrule *Siddons, Allstate,* and *Zurich* and deny "stacking" in all cases.