**ALLSTATE INSURANCE COMPANY, Appellant,**

v.

**Janet DICKE, Individually, and Janet Dicke, Administratrix of the Dwayne A. Dicke Estate, Appellee.**

**No. 92–SC–442–DG.**

Supreme Court of Kentucky.

Sept. 30, 1993.

Steven C. Jackson, Jackson & Jaggers, Paducah, for appellant.

Charles W. Brien, Prince & Brien, P.S.C., Benton, for appellee.

Michael E. Krauser, Henry V. Sanders, Patricia A. Abell, Louisville, Richard Hay, Somerset, for amici curiae.

LAMBERT, Justice.

In *Hamilton v. Allstate Ins. Co.*, Ky., 789 S.W.2d 751 (1990), this Court held that an anti-stacking policy provision identical to the one at issue here was void with respect to uninsured motorist coverage. We elaborated on this holding in *Chaffin v. Kentucky Farm Bureau Ins. Co.*, Ky., 789 S.W.2d 754 (1990), and disclosed our reliance upon the personal nature of uninsured motorist coverage, the reasonable expectation that payment of separate premiums results in separate coverages, and the public policy against deprivation of purchased coverage, particularly when the offer of such is required by statute. Here, we must determine whether a similar result shall obtain with respect to underinsured motorist coverage, or whether statutory and public policy differences between the coverages permits enforcement of the anti-stacking policy provision.

Appellee's decedent died in an automobile accident in which he was riding as a guest passenger in a motor vehicle owned and operated by another. The decedent's estate incurred damages in excess of available liability insurance limits rendering the estate entitled to underinsured motorist benefits. Appellant had issued a single automobile liability policy by which it provided two items of underinsured motorist coverage for which separate and equal premiums had been paid. Appellee sought recovery of $50,000, this being the sum of the identified coverages, but appellant, relying upon its anti-stacking clause, paid under only one such coverage in the sum of $25,000. This litigation resulted.

The trial court granted appellee's motion for summary judgment and determined that the coverages should be aggregated to a limit of $50,000. The Court of Appeals, relying on *Hamilton* and its predecessor decisions, affirmed the trial court. It found no signifi-

cance in the statutory framework by which uninsured motorist coverage and underinsured motorist coverage are originated. See KRS 304.20–020(1) and KRS 304.39–320(2).

It is wholly unnecessary to reiterate our resolution of the issues addressed in *Hamilton* and *Chaffin*. It is sufficient to say that these decisions are recent, fully considered and appear to be controlling of the comprehensive question presented here. Therefore, we will confine our discussion to those points raised by appellant by which it seeks to distinguish this case.

Appellant contends that the difference in the statutory structure between uninsured motorist coverage and underinsured motorist coverage renders the latter nonmandatory. It contrasts the language of the uninsured statute, KRS 304.20–020(1), which provides that the coverage shall be provided unless rejected, with the language of the underinsured statute, KRS 304.39–320(2), which provides that the coverage shall be provided if requested.

> The key distinction between these two statutes is clear. The uninsured motorist coverage statute absolutely requires such coverage to be present in every Kentucky automobile insurance policy, unless the insured specifically rejects that coverage in writing. On the other hand, the underinsured motorist coverage statute does *not* require such coverage to be present in any Kentucky automobile insurance policy, unless the insured specifically requests that coverage.

Appellant's brief, p. 8. From this, appellant concludes that legislative policy differs mandating a different result by this Court.

Reliance is placed upon *Flowers v. Wells*, Ky.App., 602 S.W.2d 179 (1980), which characterized underinsured motorist coverage as "optional and not mandatory" by virtue of the manner in which the coverage is obtained. Similar language is found in *Mullins v. Commonwealth Life Ins. Co.*, Ky., 839 S.W.2d 245, 247 (1992). We regard such characterizations as only half true in that the option rests exclusively with the insured. Under the statute, the insurer has no option to deny the coverage once the request for it

is made. While the uninsured and underinsured statutes differ somewhat in the means by which the coverage arises, once the coverage is written, it is statutory by virtue of the requirement that it be made available on request. KRS 304.39–320(2).

In substance, we believe the distinction between the uninsured and underinsured statutes is more illusory than real. Under the former, the insured must get the coverage unless it is rejected and under the latter, the insured must get the coverage if it is requested. While the statutory framework required appellee's decedent to take an affirmative step to obtain the coverage he wanted, that step was taken and he thus became a mandatory insured. As such, the public policy with respect to statutory coverage described in *Hamilton* is as applicable here as there.

Appellant further contends that the phrase "... subject to the terms and conditions of such coverage not inconsistent with this section ..." found in KRS 304.39–320(2) grants it greater freedom of contract and amounts to a diminution of relevant public policy. The answer to this contention lies in the requirement that such terms and conditions not be inconsistent with the section of the statute. A prohibition of the type at issue here which results in elimination of one of the items of coverage purchased by the insured is manifestly inconsistent with the statute and beyond the permissible scope of any right to set terms and conditions.

The parties have addressed a number of subsidiary questions which include a renewal of the debate over the doctrine of reasonable expectations, the significance of actuarial data not contained in the policy, and the public policy underlying the statutory requirement that underinsured motorist coverage be made available. We believe all such issues have been sufficiently addressed in our previous decisions and need not be reconsidered here.

The public policy of this jurisdiction with respect to stacking was first enunciated in *Meridian Mutual Ins. Co. v. Siddons*, Ky., 451 S.W.2d 831 (1970), and followed in various cases thereafter which include *Ohio Casualty Ins. Co. v. Stanfield*, Ky., 581 S.W.2d 555 (1979), *Hamilton v. Allstate Ins. Co.*, supra, and *Chaffin v. Farm Bureau Ins. Co.*, supra. We have consistently held that when separate items of "personal" insurance are bought and paid for, there is a reasonable expectation that the coverage will be provided. As such, we have held that it is contrary to public policy for it to be denied. While the distinctions between the statutes which govern uninsured and underinsured motorist coverage have been duly considered, none of such distinctions is sufficiently meaningful to permit a different result.

As such, we affirm the courts below.

COMBS, LEIBSON, REYNOLDS and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion.

SPAIN, J., dissents by separate opinion in which STEPHENS, C.J., joins.

STEPHENS, Chief Justice, dissenting.

Respectfully, I dissent for the reasons stated in *Hamilton v. Allstate Ins. Co.*, 789 S.W.2d 751 (1990).

SPAIN, Justice, dissenting.

Respectfully, I dissent. The Majority and the courts below apparently view the decision to be reached in this case as simply requiring a "warming over" of the decision reached earlier in *Meridian Mutual Insurance Company v. Siddons*, Ky., 451 S.W.2d 831 (1970), and its offspring, including *Ohio Casualty Insurance Company v. Stanfield*, Ky., 581 S.W.2d 555 (1979); *Hamilton v. Allstate Ins. Co.*, Ky., 789 S.W.2d 751 (1990); and *Chaffin v. Kentucky Farm Bureau Insurance Companies*, 789 S.W.2d 754 (1990). I perceive a fundamental difference, since the basis of all the above decisions was clearly that Kentucky's public policy as recognized and enunciated by the General Assembly regarding uninsured motorist (UM) coverage, outweighed the right of the parties to contract freely. No similar public policy has been proven to my satisfaction with regard to the "stacking" of under-insured motorist (UIM) coverages.

It is significant to me that UM coverage *must* be automatically provided in every motor vehicle liability policy issued or delivered in Kentucky, unless rejected by the insured in writing. KRS 304.20–020(1). UIM coverage, on the other hand, need not be included in *any* such policy unless specifically requested by the insured. KRS 304.39–320(2).

In *Flowers v. Wells,* Ky.App., 602 S.W.2d 179 (1980), it was held that an insured's request for "full coverage" did *not* include UIM coverage because such coverage was not "mandatory," but "optional." The opinion stated at page 179, "The legislature obviously could have made underinsured coverage mandatory but elected to require it to be furnished only 'on request.'"

Professor Alan I. Widiss, a well-recognized authority in the field, has commented on certain distinctions drawn between UM and UIM coverages:

Numerous appellate court decisions addressing various coverage issues have arisen in connection with underinsured motorist insurance. . . .

Although many of these cases involve issues that are essentially the same as those considered by the courts in regard to uninsured motorist insurance, there are several reasons why the questions presented in these cases are sufficiently distinctive to warrant being analyzed as a separate body of insurance law.

\* \* \* \* \* \*

[M]any insurance companies have voluntarily offered underinsured motorist insurance to purchasers in states that have not adopted statutory requirements for such coverage. When coverage issues arise in these states, it should be remembered that the courts may not view the underinsured motorist insurance as being imbued with the same public policy interest that has been generally recognized and applied by courts in regard to the scope of coverage appropriately accorded to the uninsured motorist coverage. . . .

2 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 31.6 (2d ed. 1990).

This being true, it is apparent that although Kentucky statutes mandate UM coverage for each insured vehicle (the linchpin for the decision in *Siddons, supra* ), there is no similar requirement of UIM coverage at all, much less one that requires each vehicle to have such. Furthermore, while all specific UM coverage policy provisions are mandatory, in that they must be approved by the Commissioner of Insurance, the UIM statute provides that Kentucky insurers are allowed to create the terms and conditions of that coverage for themselves. KRS 304.39–320(2).

Having concluded that there has been no clear pronouncement of public policy by the General Assembly mandating stacking of UIM coverages in Kentucky, we are left with the inescapable fact that the parties were free to contract against such stacking. In the case at hand, the appellee and her late husband had an automobile insurance policy with the appellant, insuring their two vehicles. Each vehicle was insured with UIM coverage of up to $25,000, and the policy provided that:

If **you** have two or more **autos** insured in **your** name and one of these **autos** is involved in an accident, only the coverage limits shown on the declarations page for that **auto** will apply. When **you** have two or more **autos** insured in **your** name and none of them is involved in the accident, **you** may choose any single **auto** shown on the declarations page and the coverage limits applicable to that **auto** will apply.

The limits available for any other **auto** covered by the policy will not be added to the coverage for the involved or chosen **auto**.

(Policy, pp. 3–4.)

Inasmuch as the appellee's decedent, Dwayne A. Dicke, died as the result of a one-car accident while riding as a guest passenger in the vehicle of another, the appellant, Allstate, paid $25,000 to his estate as specified in the policy as quoted above. The tortfeasor's insurer had already tendered its $50,000 liability coverage, which concededly was insufficient to cover all damages to the estate. Thus, appellees should have no further claim against appellant.

The majority opinion recites that the Court relies upon "... the reasonable expectation that payment of separate premiums results in separate coverages, and the public policy against deprivation of purchased coverage...." In support of limiting Allstate's UIM liability to one $25,000 payment, the appellant introduced proof in the trial court to refute the applicability in this case of the doctrine of "reasonable expectations." This evidence in the record clearly reflects that here Mr. and Mrs. Dicke did *not* pay for stacked UIM coverage. Rather, Allstate's premiums for UIM coverage on multiple-car policies were not calculated to encompass the increased limits of liability that stacking would entail (doubling, trebling, etc.). While UIM premiums were charged for each insured vehicle separately, the reason for such a charge was solely to account for the increased risk of an accident with an underinsured motorist arising from the fact that more than one insured vehicle was being used at any given time. Instead of the insured's having "bought and paid for" double or triple UIM coverage on each car, in fact, the insured was purchasing UIM coverage in a set amount, on each of two or more owned vehicles. The insurer would have refused to write UIM coverage on only one of several owned vehicles, although the logic of the majority opinion seems to suggest that this would be one way to limit UIM total liability.

By reason of all the above, I would have reversed the judgment permitting stacking of UIM benefits and upheld the policy provisions *excluding such.*

STEPHENS, C.J., joins this dissenting opinion.