**Patricia SPARKS, Plaintiff–Appellee, Cross–Appellant,**

v.

**James Wiley CRAFT, Defendant–Appellant, Cross–Appellee.**

Nos. 94–5801, 94–5838.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1995.

Decided Feb. 7, 1996.

Rehearing Denied April 12, 1996.

Lowell W. Lundy (argued), Barbourville, KY, W. Patrick Hauser (argued and briefed), Barbourville, KY, for plaintiff-appellee, cross-appellant.

Donald H. Combs (argued and briefed), Combs & Combs, Pikeville, KY, for defendant-appellant, cross-appellee.

Before: NORRIS, SUHRHEINRICH, and GIBSON,* Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

James Wiley Craft, an attorney, appeals from the malpractice award entered against him in favor of Patricia Sparks. After Sparks's son was killed in a car wreck, she hired Craft to sue the other driver. Craft allowed the statute of limitations to expire without perfecting Sparks's suit against the other driver. Craft argues that Sparks improperly sued him in her personal capacity, rather than as representative of her son's estate, and that the malpractice damage award was too great because the district court overestimated the amount of insurance Sparks could have collected if Craft had prosecuted her case properly. Sparks cross-appeals, arguing that the district court erroneously concluded that the other driver's liability would have been reduced by sixty percent because the accident was partly caused by an act of God. Sparks also argues that the court should have taken into account assets of the other driver in addition to available insurance in determining how much money Sparks lost because of Craft's malpractice. We reject Craft's standing arguments, but reverse part of the district court's calculation of Sparks's damages. We also reverse that part of the decision reducing Sparks's recovery because the accident resulted in part from an act of God. Finally, we remand for a factual determination of the amount of the other driver's assets that would have been available to satisfy a judgment in the car wreck case.

Sparks's son, Ivan Michael Cook, was driving his car on a Kentucky highway on Febru-ary 8, 1987. Sara Marshall, the driver of an oncoming truck, hit a patch of ice, lost control of her truck, and hit Cook head on, killing him.

Sparks contacted attorney Craft about a week after the accident. Craft agreed to file a lawsuit to enable Sparks to recover for her son's death. Under Kentucky law, the appropriate cause of action against Marshall was a wrongful death suit, Ky.Rev.Stat.Ann. § 411.130(1) (Michie 1994 Supp.), which must be prosecuted by the personal representative of the deceased, *id.* Craft prepared an order appointing Sparks as her son's personal representative, which Judge Larry Collins signed and dated February 18, 1987.[1] The order was not entered in the court clerk's office until November 30, 1989. Craft filed a lawsuit against Marshall and Allstate Insurance Company on behalf of Sparks as Cook's personal representative. The court dismissed the case because Sparks had not been validly appointed as personal representative of her son's estate within the applicable statute of limitations. Craft took an appeal from the dismissal of the wrongful death suit, but he did not file the notice of appeal in time. This Court dismissed the appeal as untimely.

Craft did not tell Sparks that her wrongful death case had been dismissed, but Sparks eventually learned of it from a stranger. She then brought this suit for malpractice, in her individual capacity. Although she and her son had been residents of Kentucky at the time of the accident, she moved to Virginia after the accident. Since Craft was still a resident of Kentucky, Sparks filed her malpractice case in the United States District Court for the Eastern District of Kentucky, alleging diversity jurisdiction.

After a bench trial, the court held that Craft committed malpractice in failing to have Sparks appointed as personal representative of Cook's estate within the limitations period and in failing to file the appeal on time.

The amount of Craft's liability depends on the value of the claim Sparks lost because of

---

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. From comments at argument, we recognize there is some controversy about the date the order was actually signed, but the record gives no clarification.

the malpractice. The value of the wrongful death claim was the amount Sparks could have actually collected on it. Therefore, the district court had to take evidence on the issues in the wrongful death case, including liability for the wreck; what the amount of the wrongful death judgment would have been; and how much of the judgment would have been collectable.

In determining liability on the wrongful death claim, the court found, "The ice on the roadway was the major contributing factor to the cause of the accident." The court did not explicitly discuss whether Marshall was negligent, but assigned her a share of liability: "In apportioning liability in the underlying wrongful death case, the Court finds as follows:

| | |
|---|---|
| Sara Mills Ogan Marshall - | 40% |
| Act of God - | 60% |
| TOTAL - | 100%" |

The court found that Ivan Michael Cook's lost wages were $850,000. Because the court only assigned forty percent of the fault for the accident to Marshall, it calculated the Cook estate's claim against Marshall to be $340,000, forty percent of $850,000.

Under the Kentucky wrongful death statute, the surviving mother and father were each entitled to half the proceeds of the claim, Ky.Rev.Stat.Ann. § 411.130(2)(d). Cook's father was living but was not a party to the action. Therefore, the court reduced the $340,000 claim by half to arrive at Sparks's share of the wrongful death damages ($170,000 plus $1,000 burial expenses).[2]

The final step was to determine how much of Sparks's $171,000 claim she could have recovered from Marshall and how much she could have recovered from her own insurer, Allstate. Sara Marshall had $25,000 in liability insurance. Sparks had underinsured motorist insurance on her own car and on the car her son drove. The policy stated a liability coverage limit of $100,000 per person. The district court held that under *Simon v. Continental Insurance Co.,* 724 S.W.2d 210 (Ky.1986), the amount of underinsured motorist coverage should be construed to be the same as the liability limit, $100,000. Further, the court held that Sparks would have been able to recover underinsured motorist benefits for each car she insured, citing *State Farm Mutual Automobile Insurance Co. v. Mattox,* 862 S.W.2d 325 (Ky.1993), and *Allstate Insurance Co. v. Dicke,* 862 S.W.2d 327 (Ky.1993). Finally, the court held that the resulting $200,000 in underinsured motorist benefits from Allstate should not be reduced by the amount of Marshall's liability coverage, citing Ky.Rev.Stat.Ann. § 304.39–320 (Michie 1994). Based on these three legal conclusions, the court held that there would have been $225,000 available in insurance proceeds to cover Sparks's $171,000 wrongful death claim. Thus, the district court concluded Craft's malpractice cost Sparks $171,000 and entered judgment for Sparks in that amount.

## I.

Craft's first argument on appeal is that Sparks lacks standing to bring this case because she sued in her personal capacity, while she asserts a claim for loss of a cause of action belonging to Cook's estate.

This standing argument has no merit. Though the district court did not specifically make findings on this issue, Craft's factual admissions lead to the legal conclusion that Sparks was his client. Sparks retained Craft to pursue her legal rights arising out of her son's death. There was no written contract, but Craft admitted, "She came to the office and engaged me to file such a lawsuit involving the death of her son." Craft and Sparks agreed on a contingency fee arrangement that Craft described as "just the standard one-third." Sparks testified that she did not know what kind of proceedings Craft would be instituting. Craft, of course, knew that the process of pursuing her rights involved bringing an action for the estate; however, the end result of that process was to be money in Sparks's pocket. Craft's undertaking was to Sparks herself and the point of his activity on behalf of the estate was to benefit

---

**2.** The court also entered judgment for prejudgment interest, but vacated that part of the award on motion for reconsideration.

Sparks, who retained him. His representation of Sparks caused him to also become the lawyer for the estate, but a lawyer can represent several clients in one matter. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986). Craft failed in his undertaking to Sparks, and, therefore, she has standing to seek damages from him.

■ Since there was an attorney-client relationship between Sparks and Craft, it is icing on the cake to point out that there is no privity requirement for legal malpractice actions in Kentucky. Even certain persons who are not a lawyer's clients can recover for damages caused by the lawyer's negligence. *See Hill v. Willmott,* 561 S.W.2d 331, 334 (Ky.Ct.App.1978) (" 'An attorney may be liable for damage caused by his negligence to a person *intended to be benefited* by his performance irrespective of any lack of privity ....' ") (quoting *Donald v. Garry,* 19 Cal. App.3d 769, 97 Cal.Rptr. 191 (1971) with approval); *Seigle v. Jasper,* 867 S.W.2d 476, 483 (Ky.Ct.App.1993) (quoting *Hill* with approval). Therefore, Craft's standing argument is doubly fallacious.

Craft further argues that the personal representative is the real party in interest. Under 28 U.S.C. § 1332(c)(2) (1988), Cook's personal representative would be deemed a citizen of the same state as Cook, which was Kentucky. Since the personal representative and Craft are both Kentucky citizens, there would be no diversity of citizenship. We have already rejected Craft's argument that Sparks cannot sue him in her individual capacity. Therefore, we necessarily reject his related argument that the personal representative is the real party in interest and that the representative's Kentucky citizenship destroys diversity jurisdiction.

## II.

Craft launches two attacks on the district court's holding that there would have been $225,000 in insurance money available to satisfy a judgment in the wrongful death case. First, he argues that the district court erred in permitting stacking of the underinsurance coverages on each of the two Sparks cars. Craft argues that stacking underinsurance coverage was not permitted in Kentucky un-

til 1993, the year the Kentucky Supreme Court decided *State Farm Mutual Automobile Insurance Co. v. Mattox,* 862 S.W.2d 325 (Ky.1993), and *Allstate Insurance Co. v. Dicke,* 862 S.W.2d 327 (Ky.1993). Therefore, he argues, stacking would not have been permitted for a 1987 accident.

■ *Dicke* held that an insurer could not defeat the insured's right to stack underinsured motorist coverages by inserting anti-stacking language in the policy. 862 S.W.2d at 328–29. *Dicke* relied on established Kentucky law permitting stacking of uninsured motorist coverage, *e.g., Meridian Mut. Ins. Co. v. Siddons,* 451 S.W.2d 831 (Ky.1970); *Ohio Cas. Ins. Co. v. Stanfield,* 581 S.W.2d 555 (Ky.1979). *Dicke* specifically stated: "While the distinctions between the statutes which govern uninsured and underinsured motorist coverage have been duly considered, none of such distinctions is sufficiently meaningful to permit a different result." 862 S.W.2d at 329. Thus, *Dicke* purported to apply established Kentucky law in existence at the time of the accident, not to create a new rule. Conversely, Craft has cited no authority indicating that Kentucky law would *not* have permitted underinsurance stacking at the time of the accident. Therefore, the district court was correct in holding that stacking would have been permitted in the wrongful death case.

Next, Craft argues that the district court erred in applying the current version of Ky. Rev.Stat.Ann. § 304.39–320, rather than the version in existence at the time of the accident. The version of Ky.Rev.Stat.Ann. § 304.39–320 in effect in 1987 required every insurer to make available underinsurance coverage "to the extent of the policy limits on the vehicle of the party recovering *less the amount paid by the liability insurer of the party recovered against.*" Ky.Rev.Stat.Ann. § 304.390–320(2) (emphasis added). Effective July 15, 1988 the underlined language was deleted. 1988 Ky.Acts ch. 180. The district court applied the current version of the statute, and so refused to reduce the $200,000 underinsurance coverage by the $25,000 available from Sara Marshall's liability coverage. The district court acknowl-

edged that generally under Kentucky law the statute in effect at the time of the injury controls; however, the general rule does not extend to " 'some statutes which relate to remedies or modes of procedures.' " (quoting *Peach v. 21 Brands Distillery*, 580 S.W.2d 235, 236 (Ky.Ct.App.1979)). Because the Kentucky Supreme Court specifically referred to Ky.Rev.Stat.Ann. § 304.39–320 as "remedial legislation" in *LaFrange v. United Services Automobile Ass'n*, 700 S.W.2d 411, 413 (1985), the district court concluded that this statute would not come within the general rule against retroactivity.

■■■ Ky.Rev.Stat.Ann. § 446.080(3) (Michie 1995) expressly provides, "No statute shall be construed to be retroactive, unless expressly so declared." The Kentucky Supreme Court has recently stated that the rule against retroactive application of statutes is to be strictly construed. *Hamilton v. Desparado Fuels, Inc.*, 868 S.W.2d 95, 97 (Ky.1993). The rule against retroactive application does not apply to remedial statutes or statutes that relate only "to remedies or modes of procedure," as opposed to statutes that create new substantive rights or obligations. *See Peabody Coal Co. v. Gossett*, 819 S.W.2d 33, 36 (Ky.1991); *Peach v. 21 Brands Distillery*, 580 S.W.2d at 236–37. This is a distinction that is much easier to state than to apply. *See, e.g., id.* Fortunately, we do not need to plumb the intricacies of the rule, for even if a statute is deemed "remedial," it is not necessarily applied across the board to all pending cases. *See Napier v. Scotia Coal Co.*, 874 S.W.2d 377, 378–79 (Ky.1993). Instead, the Kentucky courts examine the language and consider the purpose of the statute to ascertain whether the legislature intended retroactive application. *See id.; see also Hamilton*, 868 S.W.2d at 97. Therefore, we have examined the amendment to Ky.Rev.Stat.Ann. § 304.39–340 for evidence of whether the legislature intended any purpose that requires retrospective application. We find none, and Sparks has proposed none. *LaFrange's* reference to the old section 304.39–320 as "remedial" does not shed any light on the question, since *LaFrange* was decided before the amendment was enacted. Moreover, *LaFrange* did not involve any retroactivity is-

sue. Accordingly, in the absence of any evidence of retrospective purpose, we must apply the amendment to section 304.39–320 prospectively. Sparks cannot claim the benefit of the amendment. Therefore, the district court should have reduced the $200,000 underinsured motorist coverage by $25,000, the amount of available liability insurance.

## III.

■■■ Craft argues the value of Sparks's case against him should be half the available insurance, because Sparks would only be entitled to half the recovery in the wrongful death case. Ky.Rev.Stat.Ann. § 411.130(1) requires that the wrongful death case be prosecuted by the personal representative of the deceased, rather than by the ultimate beneficiaries. If Sparks had no power to prosecute the wrongful death case in her own name, she could not execute on any judgment, either, but would have to receive her share from the hand of the personal representative. Ky.Rev.Stat.Ann. § 411.130(2)(d) requires that the amount recovered by the representative be distributed half to the surviving mother and half to the surviving father. Cook's father is still alive. Therefore, the personal representative would have had to render half of any recovery to Cook's father. Thus, Sparks's share of the recovery from the insurers would have been $100,000.

## IV.

Sparks cross-appeals, arguing that the district court erred in apportioning fault between Sara Marshall and an "act of God." Sparks characterizes the district court's ruling as assigning a share of legal fault to a non-party—God. We do not read the district court's opinion to mean that God was a tortfeasor, but to refer to a problem that has received a good deal of attention in Kentucky ice-skidding jurisprudence: can a driver be held responsible for a wreck that resulted from a hazardous condition that was not his fault?

■■■ This recurring problem is sometimes reflected in a "sudden emergency" instruction, *e.g., Bass v. Williams*, 839 S.W.2d 559,

562 (Ky.Ct.App.1992), and sometimes appears as an "unavoidable accident," *see Harris v. Thompson,* 497 S.W.2d 422, 427 (Ky.Ct. App.1973), or an "act of God" issue, *see Jones v. Carr,* 382 S.W.2d 853, 856 (Ky.Ct.App. 1964). Whenever it appears, the answer is the same. If the driver who skidded on the ice was negligent in operating his car, then he (and any other negligent party to the action, *see Bass,* 839 S.W.2d at 564) is liable for the resulting harm, even though the ice may also have been a cause in fact of the accident. *Jones v. Carr* analyzes the problem logically:

> With respect to causation, two factors must always be present when a driven automobile skids on an icy roadway. Inexorably and inevitably the *cause* of this maneuver must be a combination of (1) the hazardous condition, and (2) the operation of the motor vehicle. It is the manner of manipulation by the driver that releases the latent impelling force which results in a slide. A slippery condition cannot independently cause the driver's loss of control of a motor vehicle. Clearly the handling of its operative mechanisms plays an essential part in the chain of causation of a skidding accident.

> The question in these cases is not whether the condition constituted the *sole force* causing the injury, but whether the driver was exercising due care in the operation of his vehicle when this force was activated.

382 S.W.2d at 856. The treacherous condition of icy roads forms the scenario in which the driver must exercise the same duty of care that applies in less dangerous conditions. *See Bass,* 839 S.W.2d at 563. If the driver who slid on the ice breached his duty of care, he must bear the liability for the accident. *Id.* On the other hand, if the driver fulfilled his duty of care, then the driver should be exonerated, even though his car slid on the ice and caused an accident: "Proof that an accident was unavoidable is neither more nor less than proof of nonnegligence." *Harris,* 497 S.W.2d at 427.

In this case, the district court held Marshall was at fault. That being so, she (being the sole tortfeasor) would have borne the entire liability for the accident, had Craft done his job properly. Reducing Marshall's $850,000 liability to account for the role of the ice in the accident was error under Kentucky law.

## V.

Finally, Sparks contends that the district court should have determined whether Marshall had any assets that Sparks could have executed on to satisfy the wrongful death judgment. The district court did not consider this question because it concluded that there would have been enough insurance money available to pay the $171,000 judgment Sparks should have obtained against Marshall.

Our deliberations have led to different conclusions than the district court reached about the amount of liability and insurance in the wrongful death case. We have determined that Marshall would have been liable for the entire $850,000 loss, but that Sparks can only claim half of the insurance money available to the personal representative. These conclusions make it necessary to determine whether Marshall had assets that would have been available to satisfy a judgment against her. Therefore, we must remand for the district court to make findings of fact on this issue.

## VI.

We affirm the district court's holding that Sparks has standing to sue, but reverse the holdings as to the amount of Sara Marshall's liability on the wrongful death claim and the amount of insurance money Sparks could have recovered. Accordingly, we remand for findings of fact regarding how much of the wrongful death judgment Sparks would have been able to collect from Marshall's assets.