James **ADAMS and Diana Adams, Individually and as Personal Representatives of the Estate of Lisa D. Adams, Plaintiff,**

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Illinois Farmers Insurance Company, Defendants.

No. EV 97–129–C–Y/H.

United States District Court,
S.D. Indiana,
Evansville Division.

May 28, 1999.

Jon A. Dartt, Dartt & Dartt, Rockport, IN, for James Adams, Diane Adams.

Brent R. Weil, Kightlinger & Gray, Evansville, IN, for State Farm Mut. Auto. Ins. Co.

Laura S. Reed, Riley Bennett & Egloff, Indianapolis, IN, for Illinois Farmers Ins. Co.

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

YOUNG, District Judge.

Plaintiffs filed this declaratory judgment action requesting the court to declare and determine that they be allowed to "stack" the underinsured motorist coverage on vehicles owned by State Farm Mutual Insurance Company's ("State Farm") insured, Donald and Brenda Horning.

Presently before the court is State Farm's Motion for Summary Judgment.[1] The court, having read and considered the parties's motion, designated evidence, applicable law, and being duly advised, now **grants** said motion.

This court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332.

## I. Facts

The facts in this case are not in dispute. Therefore, the court will adopt the findings of State Farm.

The Plaintiffs, James Adams and Diana Adams, are the Personal Representatives of the Estate of Lisa Adams. (Complaint, ¶ 4). On July 21, 1995, Lisa Adams ("Adams") was driving a 1993 Plymouth Acclaim which was owned by Donald and Brenda Horning. (Complaint, ¶¶ 5, 7). While driving the vehicle on the I–75 Bypass around Atlanta, Georgia, Adams was struck by a vehicle being operated by Crisanto Delson. (Complaint, ¶ 5). Adams was killed in the collision. (Complaint, ¶ 5).

At the time of the collision, the Hornings owned two vehicles, a 1992 Plymouth Voyager minivan and a 1993 Plymouth Acclaim, which were insured by State Farm. (Certificate of Coverage for Policy No. 5980–885–17E and Policy Form 9817.3, hereinafter "Ex. A"; Certificate of Coverage for Policy no. 5980–885–17F and Policy Form 9817.3, hereinafter "Ex. B"). The Hornings' 1992 Plymouth Voyager was insured under a policy with State Farm, Policy No. 5980–886–17E with underinsured motorist limits of $100,000 per person and $300,000 per accident. (Ex. A). Both policies were issued in the State of Kentucky to the Hornings who were citizens of and domiciled in Kentucky. (Complaint, ¶ 9).

State Farm paid Plaintiffs, because of the death of Adams, the $100,000 underinsured motorist limits available under Policy No. 5980–885–17F covering the 1993 Plymouth Acclaim (Policy Release Receipt and Settlement Agreement, hereinafter "Ex. C"). This represents the underinsured motorist limits available on the vehicle Adams was driving. (Ex. B). Plaintiffs are now alleging an entitlement to the underinsured motorist benefits available under Policy No. 5980–886–17E covering the Plymouth Voyager.

Policy No. 5980–885–17E, covering the Voyager driven by Adams, provides, in pertinent part, as follows:

---

1. Illinois Farmers Insurance Company is no longer a party in this action.

## UNDERINSURED MOTOR VEHICLE—COVERAGE W

\* \* \*

We will pay damages for **bodily injury** and **insured** is legally entitled to collect from the owner or driver of an **underinsured motor** vehicle. The **bodily injury** must be caused by accident arising out of the operation, maintenance or use of an **underinsured motor vehicle.**

\* \* \*

### Who is an Insured

**Insured**—means the *person* or *persons* covered by uninsured motor vehicle or underinsured motor vehicle coverage. This is:

1. the first **person** named in the declarations;
2. his or her **spouse**;
3. their **relatives**; and
4. any other **person** while *occupying*:
 a. *your car,* a *temporary substitute car* or a *newly acquired car* or trailer attached to such **car.** Such vehicle has to be used within the scope of the consent of *you* or *your spouse*; or
 b. a *car* not owned by *you, your spouse* or any *relative* or a trailer attached to such **car.** It has to be driven by the first **person** named in the declarations or that *person's spouse* and within the scope of the owner's consent.

Such other person occupying a vehicle used to carry persons for a charge is not an insured.

5. any *person* entitled to recover damages because of *bodily injury* to an *insured* under 1 through 4 above.

(Ex. A).

## II. Summary Judgment Standard

Pursuant to Trial Rule 56(c), a party is entitled to partial summary judgment on a "claim, counterclaim, or cross-claim," Fed. R.Civ.P. 56(b) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). In the case at bar, the material facts are not disputed.

## III. Issue

Whether Plaintiffs are entitled to stack the underinsured motorist benefits on the Hornings' 1992 Plymouth Voyager insured by State Farm?

## IV. Discussion

 The issue in this case can be resolved rather quickly. Kentucky law[2] recognizes the ability of *named* or "first class" insureds to aggregate or "stack"[3] underinsured motorist coverage. *Allstate v. Dicke,* 862 S.W.2d 327 (Ky.1993); *Ohio Cas. Ins. Co. v. Stanfield,* 581 S.W.2d 555 (Ky.1979). However, Kentucky law does not allow "second class"[4] insureds to stack underinsured motorist benefits. *Stanfield,* 581 S.W.2d 555 (Ky.1979). This policy is premised on the fact that the named or "first class" insured is a party to his/her insurance contract—he/she pays the premium on his/her covered vehicles, and, as such, has a reasonable expectation that coverage will be provided. *Dicke,* 862 S.W.2d at 329. One who is merely a permissive user, while technically an "insured" under the policy, is not a party to the insurance contract—he/she does not pay the premium and therefore does not have a reasonable expectation that such coverage will be provided. *Stanfield,* 581 S.W.2d at 557–60.

---

**2.** The parties agree that the governing law in this case is that of the Commonwealth of Kentucky.

**3.** Black's Law Dictionary defines "stacking" thusly: "In insurance, the ability of insured, when covered by more than one insurance policy, to obtain benefits from second policy on same claim when recovery from first policy alone would be inadequate." BLACK'S LAW DICTIONARY 1403 (6th ed.1990).

**4.** Second class insureds are those insureds covered under the policy merely by reason of their occupancy in a covered vehicle.

In this case, Adams was a second class insured of the vehicle at the time of her fatal car accident. As such, Plaintiffs are not entitled to the underinsured motorist coverage of the 1992 Plymouth Voyager that was parked at the Hornings residence at the time of the fatal car accident.

## V. Conclusion

For the reasons set forth in the court's opinion, the court finds that Adams is not an insured under State Farm Policy 5980–886–17E, and therefore is not entitled to any underinsured motorist benefits under that policy. Thus, the court **grants** State Farm Insurance Company's Motion for Summary Judgment. This case is now closed.