NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0717n.06
Filed: October 4, 2006

No. 05-6496

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRANDON MEADE, by and through his next friend and legal guardian, MAGGIE RENEA MEADE, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| GREAT AMERICAN ASSURANCE COMPANY, | ) ) ) | EASTERN DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) ) | |

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**PER CURIAM.** In this diversity insurance coverage dispute, the plaintiff, Brandon Meade, by and through his next friend and legal guardian, Maggie Renea Meade, challenges the order of the district court granting summary judgment to the defendant, Great American Assurance Company. Because the unambiguous language of the relevant insurance policy limits coverage in such a way as to exclude recovery for the injuries suffered by the plaintiff, we conclude that the district court did not err and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the day that the disputed claim in this case arose, 11-year-old Brandon Meade was a passenger in his grandfather's 1991 Plymouth Voyager van that was traveling eastbound on Interstate 64 approximately five miles from Winchester, Kentucky, when the grandfather slowed for an accident in front of him in the roadway. Unfortunately, Larry Mayes, another eastbound motorist, was traveling between 45 and 50 miles per hour and rear-ended the van with his 1994 Ford Ranger pickup truck, causing serious injuries to the young plaintiff. At the time of the accident, Mayes was insured by Kentucky Farm Bureau for $25,000, and Mayes's insurer "paid the full amount of their policy limits to" Meade. The plaintiff nevertheless sought additional recompense for the extensive damages that Brandon is alleged to have suffered.

Brandon's parents, Henry and Maggie Renea Meade, had an insurance policy for their personal vehicles with Nationwide Insurance, which also paid up to the limits of the underinsured motorist provisions of the policy. The family, however, also sought to recover underinsured motorist benefits pursuant to a "Non-Trucking Liability and Physical Damage Auto Coverage Policy" that Henry Meade had purchased from Great American to provide auxiliary coverage on three tractor-trailer tractors Henry owned as part of his business. After Great American denied the claim, the plaintiff filed suit against the insurer in Kentucky state court, alleging improper denial of benefits and bad faith. The insurance company removed the matter to federal court, however, and both parties filed motions for summary judgment.

The district court eventually determined that no genuine issues of material fact were involved in the litigation and granted summary judgment to the defendant insurance company. In doing so, the district judge concluded that Great American's underinsured motorist coverage applied only in situations involving the "non-trucking use" of Henry Meade's three semis. Because Great American was not liable on this particular claim, the court further held the company did not act in bad faith in withholding the requested payment. From that order, the plaintiff now appeals.

## DISCUSSION

We review de novo the grant of summary judgment by a district court. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party. A non-moving party cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor. *See Ciminillo*, 434 F.3d at 464.

In exercising its diversity jurisdiction in this case, the district court was required to "apply state law in accordance with the then controlling decision of the highest state court"

of the forum state. *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Kentucky Supreme Court has summarized many of the canons to be used in the interpretation of insurance contracts within the commonwealth:

> [A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

*Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992) (citations omitted). As we recognized in *Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 113 F.3d 629, 636 (6th Cir. 1997), however, such canons are applicable only "when the language of the insurance contract is ambiguous or self-contradictory. Otherwise, the contract is to be read according to its plain meaning, its true character and purpose, and the intent of the policies."

Neither the Meades nor Great American dispute the district court's description of the various vehicle insurance coverages maintained by the plaintiff's family. In his opinion and order disposing of the competing summary judgment motions, the district judge stated:

> As noted above, Henry Meade owns three different types of automotive/trucking insurance policies. Meade and his wife have car insurance with Nationwide on their personal vehicles, as required by Kentucky law. K.R.S. § 304.39-080. Presumably, this policy would cover

> any injury sustained by Henry Meade, his wife, or his son Brandon while operating or riding in one of the personal vehicles. However, the Nationwide policy is not in issue in this case.
>
> In his occupation as an owner/operator, Henry Meade also maintains insurance coverage of three semi-tractors. Coverage under that policy is at issue here. The policy is divided into two sections. The first part provides collision coverage when the semis are used to tow trailers. The second part provides coverage when the semi-tractor is "deadheading."

The court further explained, "'Deadheading' is the operation of a tractor-trailer or a truck where the trailer or truck is empty and contains no cargo; a vehicle without a load. *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1343 (6th Cir. 1996), *citing* 4 Saul E. Sorkin, *Goods in Transit*, § 45.01[1] (1994)." A similar trucking activity – "bob-tailing" – entails "the operation of a tractor without an attached trailer," *Prestige Gas Co.*, 99 F.3d at 1343, and would also be covered under the second section of the policy.

Meade's Non-Trucking Liability and Physical Damage Auto Coverage policy purports, in multiple ways, to limit Great American's liability to situations involving the use of only specified vehicles in non-trucking capacities. For example, the very appellation given to the policy indicates that the coverage offered by the insurer is not to be construed as the broad-based coverage envisioned by the plaintiff. Indeed, "non-trucking use insurance" typically describes bob-tail or deadhead insurance and thus provides coverage "only when the [listed] tractor is being used without a trailer or with an empty trailer, and is not being operated in the business of an authorized carrier." *Id.* (citations omitted).

Most importantly, the wording of the policy itself obligates Great American to pay only those claims "resulting from the ownership, maintenance or use of *a covered auto*," and repeatedly and expressly excludes coverage "while *the covered auto* is being used to transport cargo of any type." (Emphasis added.)  The declaration pages also explicitly limit the insurer's coverage to particular tractors listed on those pages, and the "Kentucky Underinsured Motorists Coverage" endorsement specifically refers only to "a covered auto."

The plaintiff, however, relies upon the holding in *Ohio Casualty Insurance Co. v. Stanfield*, 581 S.W.2d 555 (Ky. 1979), to argue that the district court erred in its grant of summary judgment to the defendant.  According to this argument, the policy's underinsured motorist coverage provision defines an "insured" to include both the "Named Insured and any 'family members'."  In *Stanfield*, the Kentucky Supreme Court found a similar definition to create two classes of insureds – the family of the designated individual and "others." *Id.* at 557.  The court further noted:

> The first class is composed of the named insured, the insured who bought and paid for the protection and who has a statutory right to reject uninsured motorist coverage, and the members of his family residing in the same household.  The protection afforded the first class is broad.  *Insureds of the first class are protected regardless of their location or activity* from damages caused by injury inflicted by an uninsured motorist.

*Id.* (emphasis added).  The court went on to hold that Stanfield, even though not operating his own vehicle at the time of his accident, was entitled to collect under the uninsured motorist provisions of his personal automobile insurance policy.  *Id.* at 559.  The holding

in *Stanfield*, applicable to uninsured motorist coverage, was extended to underinsured motorist coverage in *Allstate Insurance Co. v. Dicke*, 862 S.W.2d 327 (Ky. 1993).

Based upon *Stanfield* and *Dicke*, the plaintiff now contends that he should likewise be able to collect up to $1,500,000 in underinsured motorist coverage from the three Great American policies on Henry Meade's tractors, even though those vehicles were not involved in the accident in question. In *Stanfield* and *Dicke*, however, the Kentucky Supreme Court gave no indication that the policies at issue explicitly restricted protection to "covered autos" or that they were as narrowly drawn as were the policies in this litigation. We therefore decline to apply the broad rule in those cases to the decidedly narrow, unambiguous terms of the insurance policy at issue here.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in its entirety.