Charles Robert JAMES; and Barbara Duncan (Administratrix of Estate of Kenneth Duncan), Appellants,

v.

Janice JAMES (Administratrix of Estate of Jackie James, Jr.); and Nationwide Insurance Company, Appellees,

and

Janice James (Administratrix of Estate of Jackie James, Jr.), Appellant,

v.

Charles Robert James; Barbara Duncan (Administratrix of Estate of Kenneth Duncan); and Nationwide Insurance Company, Appellees.

No. 1998–SC–01297–DG.

Supreme Court of Kentucky.

Aug. 24, 2000.

George M. Hogg, Olive Hill, for Charles Robert James and Barbara Duncan.

Michael B. Fox, Olive Hill, for Janice James.

Sharon Rowsey, Ashland, Gregory L. Smith, R. Brian Evans, Smith & Evans, Louisville, for Nationwide Insurance Company.

STUMBO, Justice.

We granted discretionary review in this case to once again address the issue of whether and under what circumstances an injured party may aggregate or "stack" underinsured motorist (UIM) coverage. Specifically, we resolve the question of whether guest passengers who are not members of the insured's household may stack UIM coverage on all policies issued to the owner of the vehicle.

This case arose following an automobile accident in which driver Jackie James, Jr. and passenger Kenneth Duncan were killed, and passenger Charles Robert James was injured. The accident was caused by the negligence of another driver who was also killed in the collision. Jackie James was driving a car owned by his father-in-law, Omer Watkins. Watkins owned four vehicles and paid separate premiums for UIM coverage on each vehicle. Watkins' policy contained an anti-stacking provision which provided:

> In no event will any insured other than you or a relative be entitled to more than the highest per person limit applicable to any one motor vehicle under this policy or any other policy issued by us.

Plaintiffs, the injured Charles Robert James, and the estates of the two men (Jackie James and Duncan) killed in the collision, brought an action against the estate of the tortfeasor. Because the judgment entered against the estate of the tortfeasor exceeded the limits of the tortfeasor's insurance coverage, the plaintiffs sought to stack the UIM coverage payable under the policy issued to Omer Watkins. Watkins' insurer, Nationwide, argued the above-quoted anti-stacking provision precluded the plaintiffs from stacking the coverages and limited them to recovery only

of UIM payment applicable to the vehicle in which they were riding at the time of the accident. The Carter Circuit Court held a hearing on the matter. At the hearing Watkins testified that based upon a prior experience involving an uninsured tortfeasor, he purposefully increased the amounts of his automobile insurance coverage. When purchasing this additional insurance from Nationwide, he specifically requested both UM and UIM coverage. Subsequent to purchasing the initial coverage, he added other automobiles to the same policy. It was his specific understanding that he, his family, and any other person occupying any of his vehicles would be permitted to stack the UIM coverage from all insured vehicles owned by him. The court found Watkins' expectation of coverage was reasonable, and citing *Allstate Ins. Co. v. Dicke*, Ky., 862 S.W.2d 327 (1993), entered judgment in favor of the plaintiffs for the aggregate UIM coverage available under the policy for the four insured vehicles.

A secondary issue which arises in this case is whether, at the time of the accident, Jackie James and his family were residents of Watkins' household, thus placing Jackie James within the definition of "relative" under the policy issued to Watkins and exempting him from the anti-stacking provision at issue here. After hearing testimony from Janice James and Watkins, the trial court found Jackie James was residing with Watkins at the time of the accident and therefore was a "relative" as defined by the Nationwide policy.

The Court of Appeals reversed. Citing *Ohio Casualty Ins. Co. v. Stanfield*, Ky., 581 S.W.2d 555 (1979), the court held the plaintiffs in this case are "insureds of the second class" and thus not permitted to stack the UIM coverages on the other three Watkins' vehicles. The appellate court also reversed, as clearly erroneous, the trial court's finding that Jackie James was residing with Watkins at the time of the accident. Charles Robert James and the Administratrix of the Estate of Kenneth Duncan timely sought discretionary review of the Court of Appeals' opinion. Janice James, Administratrix of the Estate of Jackie James, failed to timely file a motion for discretionary review. However, because Jackie James's Estate was named as a respondent in the above-mentioned motion for discretionary review, it was permitted to file a cross-motion for discretionary review. We granted both the motion and the cross-motion for discretionary review.

The first question for our consideration is whether guest passengers are entitled to stack UIM coverage in the same manner as insured persons and members of their family. In *Allstate Ins. Co. v. Dicke*, Ky., 862 S.W.2d 327 (1993), we held an anti-stacking policy provision void with respect to UIM coverage.[1] In so doing, we adopted the logic and rationale of our earlier cases dealing with the issue of stacking in the context of uninsured motorist coverage (UM). *See, e.g., Hamilton v. Allstate Ins. Co.*, Ky., 789 S.W.2d 751 (1990); *Chaffin v. Kentucky Farm Bureau Ins. Co.*, Ky., 789 S.W.2d 754 (1990); *Ohio Casualty Ins. Co. v. Stanfield*, Ky., 581 S.W.2d 555 (1979); *Meridian Mutual Ins. Co. v. Siddons*, Ky., 451 S.W.2d 831 (1970). In those cases, we held that, pursuant to the doctrine of "reasonable expectations," when one has paid separate premiums on separate vehicles, he may reasonably expect to be able to stack those coverages. The Plaintiffs argue that both the holding and the rationale of *Dicke* support their contention that they are entitled to stack the UIM coverages from Omer Watkins' four vehicles. Not only did Watkins pay

---

1. As here, the *Dicke* case also involved a guest passenger. However, unlike in the instant case, that fact was not the focus of the opinion, and the parties failed to argue that the injured party's status as a guest passenger precluded stacking. Therefore, because we did not address the precise question which is before us today, *Dicke* is not dispositive of the issue at hand.

four separate premiums for each of his four UIM coverages, but he also testified he believed these four coverages were stackable and were available to all permissive users of his vehicles. Plaintiffs argue that Watkins' belief was reasonable, and thus, we must permit his guest passengers to stack the UIM coverages Watkins purchased. This argument must fail because it lacks a logical connector between Watkins' belief and his guest passengers' rights.

In *Ohio Casualty Ins. Co. v. Stanfield*, Ky., 581 S.W.2d 555 (1979), we found the doctrine of "reasonable expectations" supported the injured party's contention that he must be allowed to stack UM coverages from his own personal automobile insurance policy, but we precluded him from stacking UM coverages from his employer's policy, even though the accident occurred while he was using a vehicle insured by his employer.[2] Our reason for so holding was premised upon the distinction between what we called "insureds of the first class" and "insureds of the second class." *Id.* at 557–59 (citing *Lambert v. Liberty Mutual Ins. Co.*, 331 So.2d 260 (Ala.1976); *Cunningham v. Insurance Co. of North America*, 213 Va. 72, 189 S.E.2d 832 (1972); *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969)). Insureds of the first class include the named insured—he or she who bought and paid for the protections, and the members of his or her family residing in the same household. Insureds of the second class are those who fall outside the first class, but who are nevertheless entitled to protection for damages from injury inflicted while they are occupying an insured vehicle. *Id.* at 557. The policy at issue here, like the policy in *Stanfield*, distinguishes between the named insured and his or her relatives on the one hand, and "others" on the other hand.

In *Stanfield*, we explained why insureds of the first class are entitled to stack coverages, but insureds of the second class are not:

> The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, the argument and reasoning does not apply to a permissive user of a vehicle who pays no premium and does not receive the broader uninsured motorist coverage of a named insured.

*Id.* at 558 (quoting *Cunningham*, 189 S.E.2d at 836). Plaintiffs here argue the doctrine of reasonable expectations compels a different result because Omer Watkins reasonably believed that not only he, himself, was entitled to stack the UIM coverages of the four vehicles he separately insured, but also that his family members and guest passengers would be entitled to do so as well. *Stanfield* addresses the principle of reasonable expectations, and explains why it fails to overcome a policy's anti-stacking provision as it applies to insureds of the second class:

> [B]y permitting the insured to stack his coverages [courts] "simply honor[ ] the reasonable expectations of the 'named insured' that his payment of an additional premium will result in increased coverage for those falling within the definition of the 'named insured,' and where an expectation of this nature is in conflict with a limiting clause in the policy, the resulting ambiguity must be resolved in favor of the insured due to the nature of insurance contracts." . . . [S]ince an insured of the second class

---

2. Plaintiffs would have us distinguish *Stanfield* from the instant case because *Stanfield* involved an injured party's desire to stack coverages under his employer's fleet policy covering 63 vehicles, whereas the case at bar deals with a policy owned by an individual covering a far fewer number of vehicles. The distinction is irrelevant given that our holding in *Stanfield* was premised on the difference between first and second class insureds, not on the type of policy, the amount of premium paid, or the number of vehicles covered.

was not a party to the contract his expectations as to extent of his coverage do not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause.

*Id.* at 558–59 (quoting *Lambert v. Liberty Mutual Ins. Co.,* 331 So.2d 260, 263–65). Therefore, what Watkins reasonably may have expected has little to do with what his guest passengers are entitled to recover. The passengers paid no premium on any of Watkins' vehicles, much less on all four vehicles. Therefore, prior to the accident they had no expectation of any UIM recovery at all, given that UIM coverage is not statutorily required. Thus, whether viewed under the "reasonable expectations" rationale or the "what you buy is what you get" rationale, the guest passengers here, as insureds of the second class, have no basis to aggregate the coverages of the multiple vehicles insured under Watkins' policy.

Although our discussion in *Stanfield* of the two classes of insureds arose in the context of a claim to stack uninsured motorist insurance (UM), its logic and reasoning apply equally to claims to stack underinsured motorist insurance (UIM). As we stated in *Allstate v. Dicke,* Ky., 862 S.W.2d 327, 329 (1993), "we believe the distinction between the uninsured and underinsured statutes is more illusory than real." Therefore, we hold the guest passengers in Omer Watkins' car, as insureds of the second class, are not entitled to stack the UIM coverage for all four vehicles covered under Watkins' automobile insurance policy. Rather, they may recover only under the single coverage for the vehicle in which they were riding at the time of the accident.

We now address the contention of cross-Appellant Janice James, that her deceased husband Jackie James was a "relative" of Omer Watkins as that term is defined by Watkins' insurance policy. If found to be Watkins' relative, then Jackie James would not be subject to the anti-stacking provision of the policy which precludes second-class insureds from stacking UIM coverages. Rather, he would be a first-class insured entitled to stack coverage for all four vehicles insured by Watkins.

The policy here defines "relative" as "one who regularly lives in your household and who is related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household." The Estate of Jackie James contends that because Jackie James was Watkins' son-in-law, and because James, his wife and children resided with Watkins at the time of the accident, he met the definition of "relative" under the policy. After hearing Watkins' and Janice James's testimony on the matter, the trial court found Jackie James resided with Watkins and was therefore his relative for purposes of the insurance coverage. As this is a factual determination, we cannot set it aside unless we find it to be clearly erroneous, as did the Court of Appeals. *Lawson v. Loid,* Ky., 896 S.W.2d 1, 3 (1995).

During the hearing before the trial court, both Janice James and Watkins testified that Janice and Jackie James were renting a house in Enterprise, Kentucky, but that the owner of the house intended to sell it and had given the Jameses notice that they needed to move. Both also testified the house the Jameses rented was dilapidated and uncomfortable to live in when the weather was extremely cold or extremely hot. Prior to the accident, the couple stayed in Watkins' home three to five nights a week. However, the couple also stayed with Jackie James's mother on occasion and also at their house in Enterprise. As Watkins put it, the Jameses stayed "just wherever, you know, that they could find, you know, whenever it was real cold weather or anything like that." This testimony certainly indicates that when the James family stayed in Watkins' home, it was to escape unpleasant weather conditions, not because they considered Watkins' house to be their home.

Key to our resolution of this matter is Watkins' and James's testimony regarding the impending sale of the Enterprise house. Watkins testified that the couple "didn't know where they was going to move, so they moved in with me temporary till they could get settled." Janice James testified that following the sale of their home, she and Jackie would "have to stay permanent—seven days a week with Mom and Dad [the Watkins]." At the time of the accident, however, the couple was "still packing" their belongings. Clearly, although the couple may have intended to move in permanently with Watkins following the sale of their home, at the time of the accident, they were not residing in Watkins' household, but rather, considered the house in Enterprise to be their home. This conclusion is supported by the fact that each time Janice James was asked where she was living at the time of the accident, she replied that she lived in Enterprise. Thus, as did the Court of Appeals, we find the trial court's decisions that Jackie James was a "relative" under the terms of Omer Watkins policy to be clearly erroneous. As the appellate court stated, "the fact that Janice and Jackie James were planning to move in with Watkins due to the sale of their rental house does not alter our decision, because they had not actually moved" at the time of the accident. *See Old Reliable Ins. Co. v. Brown,* Ky.App., 558 S.W.2d 190 (1977) (intention to return home not sufficient to support conclusion that mother and daughter resided in same household for insurance purposes).

For the reasons set forth above, the decision of the Court of Appeals is hereby affirmed.

LAMBERT, C.J.; and GRAVES, JOHNSTONE, and KELLER, JJ., concur.

COOPER and WINTERSHEIMER, JJ., concur in result only.