BRIEFS FOR APPELLANT: Charles H. Cassis, Aaron J. Silletto, Chadler M. Hardin, Prospect, Kentucky.
ORAL ARGUMENT FOR APPELLANT: Charles H. Cassis, Chadler M. Hardin, Prospect, Kentucky.
BRIEF FOR APPELLEES: CHRISTOPHER LEE SLONE; JESSICA CANTRELL; NANCY PERKINS, AS MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND OF RAYMOND MITCHELL KEETON, AN INFANT; RAMONA CONLEY, AS MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND OF SAMANTHA CONLEY, AN INFANT; RAMONA CONLEY, AS MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND OF KAYLEE CONLEY, AN INFANT; CRYSTAL HALL, AS MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND OF KATILYNN D. HALL, AN INFANT; PATRICIA RUSSELL, AS MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND OF TARAH RUSSELL, AN INFANT; PATRICIA RUSSELL, AS MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND OF TATEM RUSSELL, AN INFANT; HEATHER POE, AS PARENT AND NATURAL GUARDIAN OF RHYLEE POE, AN INFANT; BENNIE POE, AS PARENT AND NATURAL GUARDIAN OF RHYLEE POE, AN INFANT; AND DAVID BLEVINS, AS GRANDFATHER, CUSTODIAN, AND NEXT FRIEND OF THE INFANT, PEYTON ELKINS, Jennifer L. Connor, John C. Collins, Salyersville, Kentucky.
BRIEF FOR APPELLEES: DEWAYNE DAVIS; LINDA HOWARD; BILLIE RAMEY; JUDY FRANCIS, AS GUARDIAN AND NEXT FRIEND OF KENNA ISAAC, AN INFANT; SHERRI ARNETT, AS NATURAL GUARDIAN AND NEXT FRIEND OF CHRISTINA ARNETT, AN INFANT; ASHLEY ARNETT, AS NATURAL GUARDIAN AND NEXT FRIEND OF JACKLYN ARNETT, MADISON ARNETT, AND ALEXIE ARNETT, INFANTS; SHANNON VANHOOSE, AS NATURAL GUARDIANS AND NEXT FRIENDS OF LINZIE VANHOOSE, AN INFANT; JERRY VANHOOSE, AS NATURAL GUARDIANS AND NEXT FRIENDS OF LINZIE VANHOOSE, AN INFANT; DUNCAN VANHOOSE, AN INFANT, C. Graham Martin, G. Todd Martin, Salyersville, Kentucky.
ORAL ARGUMENT FOR APPELLEES: Kellie Collins, Jack Collins, Lexington, Kentucky.
BEFORE: CLAYTON, J. LAMBERT AND THOMPSON, JUDGES.
OPINION
THOMPSON, JUDGE:
*925 Consolidated Insurance Company appeals from an order of the Magoffin Circuit Court declaring that the appellees are entitled to stack the underinsured motorist coverages (UIM) provided in a vehicle insurance policy issued to the Magoffin County Board of Education. The primary issue presented is whether an anti-stacking provision in the Consolidated policy limits the total UIM coverage available to $500,000. We conclude that the provision precludes the appellees, who are insureds of the second class, from stacking the UIM coverages. We further conclude that any alleged misrepresentation made by a Consolidated insurance agent regarding stacking to the Magoffin County Board of Education *926 does not estop Consolidated from enforcing the anti-stacking provision.
The appellees include 31 students, a bus monitor, and a bus driver (collectively the bus occupants) who claim they sustained injuries when an automobile operated by Odell Pyles rear-ended a Magoffin County school bus. The bus occupants filed an action against Pyles alleging negligence in causing the accident. Pyles had a minimum limits insurance policy of $25,000 per person, $50,000 per accident. The bus occupants later amended their complaint to add a cause of action seeking a declaratory judgment as to the limits of UIM coverage available under the Consolidated policy issued to the Magoffin County Board of Education.
The policy issued by Consolidated listing the Magoffin County Board of Education as the named insured is a fleet policy providing coverage for 63 school buses owned by the Board with an individual premium schedule for each vehicle for a total premium for UIM coverage of $5,049. As stated in the "schedule of coverages," it provides UIM coverage up to $500,000 per accident. If the named insured is a partnership, limited liability corporation or any other form of organization, the underinsured motorists endorsement includes within the definition of "insured" "[a]nyone 'occupying a covered auto." ' It also contains an anti-stacking provision which states as follows:
D. Limit of Insurance
1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting for any one "accident", is the limit of Underinsured Motorists Insurance shown in the Schedule or Declarations. If there is more than one covered "auto", our limit of insurance for any one "accident", if the "bodily injury" is sustained by an individual Named Insured or any "family member", is the sum of the limits applicable to each covered "auto". Subject to this maximum limit of liability for all damages:
a. The most we will pay for damages sustained in such "accident" by an "insured" other than an individual Named Insured or any "family member" is that "insured's" pro rate share of the limit shown in the Schedule or Declarations applicable to the vehicle that "insured" was "occupying" at the time of the "accident".
b. An Individual Named Insured or any "family member" who sustains "bodily injury" in such "accident" will also be entitled to a pro rate share of the limit described in Paragraph a. above.
A person's pro rata share is the proportion that that person's damages bear to the total damages sustained to all "insured".
2. If the "bodily injury" is sustained by any "insured", other than the individual Named Insured or any "family member", in an "accident" in which neither such Named Insured nor any "family member" sustained "bodily injury", the limit of liability shown in the Schedule or Declarations for this coverage is our maximum limit of liability for all damages resulting from any such "accident".
The bus occupants sought a declaration that UIM coverages on each of the 63 school buses listed on the Consolidated policy can be stacked for a total combined policy limit of $31,500,000. Consolidated argued the bus occupants are insureds of the second class and, therefore, may not stack the UIM coverages. The bus occupants argued that pursuant to the reasonable *927 expectations doctrine, the coverages may be stacked; that ambiguous language in the policy requires it be construed in their favor to permit stacking; and Consolidated was estopped from denying stacking because of representations made to the Magoffin County Board of Education by an insurance agent that the UIM coverages could be stacked. In support of their arguments, the bus occupants attached an affidavit of Rodney Ward stating that the Magoffin County Board of Education informed its insurance agent, Curneal and Hignite Insurance, that it wanted high coverage limits because of the large number of uninsured motorists or those with only minimum liability limits in Magoffin County and its agent represented that the UIM coverage was stackable.
The trial court issued an order declaring the $500,000 UIM limit on each of the 63 school buses owned by the Magoffin County Board of Education could be stacked. It found the bus occupants had a reasonable expectation that the policy was stackable based on the separate premiums paid for each bus and the policy language. The court further found Consolidated was estopped from denying the policies could be stacked. After the court made its order final and appealable, Consolidated appealed.
"A party seeking to ... obtain a declaratory judgment may, at any time ... move with or without supporting affidavits for a summary judgment in his favor[.]" Kentucky Rules of Civil Procedure (CR) 56.01. "In cases where a summary judgment has been granted in a declaratory judgment action and no bench trial held, the standard of review for summary judgments is utilized." Ladd v. Ladd , 323 S.W.3d 772, 776 (Ky. App. 2010). "The general formula Kentucky courts at all levels employ to determine whether summary judgment is proper is to ask whether there are genuine issues of material fact, and, if not, whether the movant is entitled to judgment as a matter of law." Smith v. O'Dea, 939 S.W.2d 353, 355 (Ky. App. 1997).
We interpret an insurance contract as a matter of law and our review is de novo. Cincinnati Ins. Co. v. Motorists Mut. Ins. Co., 306 S.W.3d 69, 73 (Ky. 2010). In doing so, we apply certain rules of construction including that when the terms of an insurance contract are unambiguous and not unreasonable, the terms will be enforced as written. Wehr Constructors, Inc. v. Assurance Co. of Am., 384 S.W.3d 680, 685 (Ky. 2012). The terms of an insurance contract are "interpreted in light of the usage and understanding of the average person." Stone v. Kentucky Farm Bureau Mut. Ins. Co., 34 S.W.3d 809, 811 (Ky. App. 2000). Although ambiguous terms are to be construed in favor of the insured, "we must also give the policy a reasonable interpretation, and there is no requirement that every doubt be resolved against the insurer." Id. Moreover, there must be an actual ambiguity. "The mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon , 157 S.W.3d 626, 633-34 (Ky. 2005) (quoting True v. Raines , 99 S.W.3d 439, 443 (Ky. 2003) ). With these rules of interpretation as our framework, we consider whether the bus occupants may stack the UIM of coverages on the 63 buses or whether they are limited to their pro rata share of the $500,000 coverage on the single bus they occupied at the time of the accident.
Stacking insurance coverages permits an insured to add coverages from other vehicles and/or different policies together to provide a higher amount of coverage available under any one vehicle or policy.
*928 Stacking has been permitted in the context of uninsured motorist (UM) coverage by a named insured or family member of the named insured. See, e.g., Hamilton v. Allstate Ins. Co., 789 S.W.2d 751 (Ky. 1990) ; Chaffin v. Kentucky Farm Bureau Ins. Cos., 789 S.W.2d 754 (Ky. 1990) ; Ohio Casualty Ins. Co. v. Stanfield, 581 S.W.2d 555 (Ky. 1979) ; Meridian Mutual Ins. Co. v. Siddons, 451 S.W.2d 831 (Ky. 1970). "In those cases, [our Supreme Court] held that, pursuant to the doctrine of 'reasonable expectations,' when one has paid separate premiums on separate vehicles, he may reasonably expect to be able to stack those coverages." James v. James, 25 S.W.3d 110, 112 (Ky. 2000). Although that same reasoning was extended to UIM anti-stacking provisions in Allstate Ins. Co. v. Dicke , 862 S.W.2d 327 (Ky. 1993), our Supreme Court overruled Dicke in Philadelphia Indemnity Ins. Co., Inc. v. Tryon , 502 S.W.3d 585 (Ky. 2016).[1] Concluding that the Dicke Court failed to recognize the statutory difference between UM and UIM coverage and the parties' freedom to contract, the Court held that that reasonable and unambiguous limitations on UIM coverage are enforceable. Id. at 592.
Despite the emergence of the reasonable expectations doctrine in the context of named insured and family members, Kentucky law has been consistent that the doctrine has no application to "other" insureds seeking to stack coverages. In Stanfield , 581 S.W.2d 555, a police officer was injured while riding a police motorcycle and argued that he should not only be allowed to stack UM coverage from his own insurance policy but also the UM coverage on each of the 63 vehicles insured under a fleet policy issued to his employer, the City of Newport. The policy issued to the City contained the following provision:
Persons insured
Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;
(b) any other person while occupying an insured highway vehicle; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.
Id. at 557. The Court held that there were two classes of insured under the policy. Insureds who came under subdivision (a) of the policy were insureds of the first class and could stack the UM coverages. However, insureds who fell under the definition "other person" were insureds of the second class and could not stack the uninsured coverages.
The Stanfield Court explained the reason why insureds of the second class cannot stack UM coverages.
The purpose of uninsured motorist insurance is to provide compensation to the victim of the uninsured motorist. The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, the argument and reasoning does not apply to a permissive user of a vehicle who pays no premium and does not receive the *929 broader uninsured motorist coverage of a named insured.
Id. at 558 (quoting Cunningham v. Ins. Co. of North America , 213 Va. 72, 189 S.E.2d 832, 836 (1972) ). The Court continued stating that "since an insured of the second class was not a party to the contract his expectations as to extent of his coverage does not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause." Id. at 558-59 (citing Lambert v. Liberty Mutual Ins. Co. , 331 So.2d 260, 264-65 (Ala. 1976) ). Although the officer could stack UM coverages from his own personal automobile insurance policy, he could not stack UM coverages from the City's fleet policy. Id. at 559.
In James , 25 S.W.3d at 110, the Court applied the reasoning of Stanfield to preclude stacking of UIM coverages by insureds of the second class. As here, the named insured paid separate premiums for UIM coverage on each vehicle. The policy contained an anti-stacking provision that limited the amount of coverage afforded insureds of the second class to "the highest per person limit applicable to any one motor vehicle under this policy or any other policy issued by us." Id. at 111.
As in Stanfield , the Court stressed the distinction between insured of the first class and insureds of the second class:
Insureds of the first class include the named insured-he or she who bought and paid for the protections, and the members of his or her family residing in the same household. Insureds of the second class are those who fall outside the first class, but who are nevertheless entitled to protection for damages from injury inflicted while they are occupying an insured vehicle.
Id. at 113. Concluding that the "what you buy is what you get rationale" of the reasonable expectations doctrine is not viable as applied to insureds of the second class who did not purchase the UIM coverage, the Court held that insureds of the second class "may recover only under the single coverage for the vehicle in which they were riding at the time of the accident." Id. at 114.
The bus occupants are not named insureds or family members of the Magoffin Board of Education. They are insureds under the Consolidated policy only because of their occupancy of a bus covered under that policy. Nevertheless, the bus occupants argue that they should be considered named insureds because 702 Kentucky Administrative Regulation (KAR) 5:030 mandates the purchase of liability and UM/UIM coverage by a local board of education. We disagree.
Generally, in Kentucky, UIM coverage is not mandatory. Kentucky Revised Statutes (KRS) 304.39-320(2). However, school buses transport large numbers of children and any single accident can result in substantial damages requiring more coverage than required by our insurance statutes. Therefore, 702 KAR 5:030(22) mandates insurance coverages for school buses be at least "$2,000,000 per occurrence combined or $250,000/$2,000,000 split," for bodily injury and property damage and "uninsured/underinsured motorist $500,000." While the regulation requires that boards of education provide these coverage amounts on each school bus, it does not logically follow that the UIM coverage provided by fleet policies issued to school boards may be stacked.
We need only to return to the Supreme Court's decision in Stanfield to reach our conclusion. As we have stated, Stanfield involved UM coverage provided on a fleet policy issued to the City of Newport on the City's police vehicles. UM coverage is mandatory in Kentucky, *930 KRS 304.20-020(2), and the coverage was provided on vehicles that would not and obviously could not be driven by the City. While the officer in that case was an anticipated insured covered under the policy, the Court found he was an insured of the second class.
The bus occupants cannot be classified differently. Regardless of the mandatory nature of the UIM coverage as applicable to school buses and that it was anticipated that students, bus drivers and bus monitors would be aboard the covered buses, they are not named insureds or family members of the named insured and, therefore, are insureds of the second class.
The law in Kentucky is that the reasonable expectations doctrine is not applicable to make an otherwise unambiguous anti-stacking provision unenforceable as it applies to insureds of the second class. The bus occupants argue that even if the doctrine is not applicable, the UIM endorsement is otherwise ambiguous and must be construed to permit insureds of the second class to stack the UIM coverages. They claim the Consolidated UIM endorsement is ambiguous, because it expands coverage to the sum of the limits applicable to each covered auto but then attempts to limit coverage to the amount shown in the schedule or declarations regardless of the number of covered autos.
Their argument is a strained attempt to "muddy the waters" and create an ambiguity where one does not exist. Kentucky Ass'n of Counties All Lines Fund Trust , 157 S.W.3d at 633-34. The bus occupants ignore that the "expansion" of coverage is limited to the named insured or any family member or, as we have explained, insureds of the first class. The "Limit of Insurance" provision in the UIM endorsement unambiguously states that "the most we will pay for damages sustained in an accident by an 'insured' other than an individual Named Insured or any 'family member' is that insured's pro rata share of the limit shown in the schedule or declarations applicable to the vehicle that 'insured' was 'occupying' at the time of the 'accident." ' (emphasis added). The claimed ambiguity in the policy by the bus occupants does not render unambiguous the language that insureds "other than" the named insured or any family member is limited to UIM coverage on the bus they occupied at the time of the accident.
Moreover, the anti-stacking provision is not unreasonable where 63 buses are covered by the policy for a total UIM premium of $5,049. Without an anti-stacking provision applicable to insureds of the second class, Consolidated's exposure would be $31,500,000. Undoubtedly the premium would be much higher and perhaps not even affordable for the Magoffin County School Board. There is simply no reasonable interpretation of the policy language that would permit the bus occupants, as insureds of the second class, to stack the UIM coverages.
We also reject the argument that the anti-stacking provision in the Consolidated policy renders the UIM coverage illusory. The coverage is not illusory because, as admitted by Consolidated, there is UIM coverage available to the bus occupants as insureds in the amount of $500,000. The Court in Tyron made this same distinction when it is stated:
[T]here is a true distinction between illusory coverage and instances where the policy simply does not apply to the facts of the case. Indeed, this is perfectly in line with the text of the UIM portion of the MVRA-insurers may limit UIM coverage, at least within the confines of the rest of the statute. We think this strikes an adequate balance between the Commonwealth's interests in protecting drivers on its roadways with the insurance *931 companies' desires to assess accurately the underwriting risks involved. Individuals are perfectly capable of negotiating UIM coverage, and it strains credulity to suggest it is too tall a task for insureds to read their policies.
Tryon , 502 S.W.3d at 591-92 (footnote omitted).
The final reason found by the trial court to permit stacking of the UIM coverages is that Consolidated is estopped to deny that the policy could be stacked based on representations made by its agent to the Magoffin County School Board that the coverages could be stacked. Consolidated argues that the person who made the alleged representation was a broker and not a Consolidated agent; Ward's affidavit was inadmissible because it was based on inadmissible hearsay; and extrinsic evidence could not be considered because the fleet policy is clear and unambiguous. The bus occupants argue Consolidated's arguments are unpreserved because they did not file a motion to alter or amend the court's order and seek to take the deposition of Ward.
We find no merit to the bus occupants' preservation argument. Consolidated was not required to file a motion to alter or amend the trial court's order so that it could take Ward's deposition. Consolidated is correct that as a matter of law, the trial court improperly considered Ward's affidavit.
First, the anti-stacking provision is unambiguous and, therefore, the trial court erred by considering extrinsic evidence to determine its meaning. Cantrell Supply, Inc. v. Liberty Mut. Ins. Co. , 94 S.W.3d 381, 385 (Ky. App. 2002). Second, and most important to the specific facts here, the Board's belief that an insured of the second class could stack the UIM coverages is irrelevant.
In Kentucky, an insurance company is liable "when [an] agent acts within the scope of his authority, the insured reasonably relies upon that act, and the reliance constitutes the cause of the insured's damage." Pan-Am. Life Ins. Co. v. Roethke , 30 S.W.3d 128, 132 (Ky. 2000). However, even if a Consolidated agent made an affirmative misrepresentation to the Magoffin County School Board that the UIM coverage could be stacked, the bus occupants as insureds of the second class could not have relied upon such misrepresentation, which they knew nothing about and when they had no reasonable expectation that they could stack the UIM coverage.
In James , the named insured not only "paid four separate premiums for each of his four UIM coverages, but also testified he believed these four coverages were stackable and were available to all permissive users of his vehicles." James , 25 S.W.3d at 113. The insureds of the second class argued that the named insured's belief was reasonable and, therefore, they could stack the coverages. The Court held this argument failed because it lacked a "logical connector" between the named insured's belief and the rights of the insureds of the second class. Id.
The same is true in this case. There is no logical connection between any misrepresentation to the Magoffin County Board of Education and the bus occupants right to stack the UIM coverages. For the reasons stated, the trial court erred when it considered Ward's affidavit.
We conclude that the bus occupants are insureds of the second class who are precluded from stacking the UIM coverages under the unambiguous language of the Consolidated fleet policy. Therefore, it is unnecessary to address Consolidated's remaining arguments including that fleet policies are per se not stackable by insureds *932 of the first class or insureds of the second class.[2] We do note that although our Supreme Court has not expressly adopted such a bright-line rule, in Stanfield , the Court recognized that because of the large number of vehicles insured under fleet policies, intra-policy stacking creates unexpected and sometimes absurd financial exposure for a relatively small premium paid. Stanfield , 581 S.W.2d at 559. The Court cited with approval the language used by the Alabama Supreme Court in Lambert , 331 So.2d at 265 :
Can it be seriously contended that Seaboard (the employer) expected that the $4.00 premium it paid for uninsured motorist coverage on each of its 1,699 vehicles would purchase coverage for all permissive occupants of its vehicles to the tune of $16,900,000? Clearly, such an expectation would not have been a reasonable one under the terms of the commercial fleet policy here in question. The status of Lambert (for purposes of uninsured motorist coverage) as an insured solely by virtue of his occupancy of the vehicle, is clearly distinguishable from the status of a named insured who is entitled to stack coverages by virtue of his personal payment of an additional premium for each vehicle insured under a multi-vehicle policy.
Stanfield , 581 S.W.2d at 559 (quotations omitted).
We conclude by noting that $500,000 to be shared pro rata by the 33 bus occupants versus the $31,500,000 sought in UIM coverage may or may not be sufficient. However, the deficiency in coverage cannot be cured by creating a judicial remedy for these bus occupants where the insurance policy prohibits stacking and the bus occupants had no reasonable expectation that the coverage could be stacked. Perhaps the minimum limits of insurance coverage required by 702 KAR 5:030 is woefully insufficient considering the number of occupants, including children, that may occupy a school bus at one time and the potential for serious injuries. That question is one reserved for the legislative branch.
Based on the foregoing, the order of the Magoffin Circuit Court is reversed and the case remanded for entry of a judgment declaring that the UIM coverages on each of the 63 school buses covered by the Consolidated fleet policy may not be stacked by the bus occupants.
ALL CONCUR.

Although the Court limited its decision to exclusion in UIM policies, it questioned whether the "reasonable-expectation analysis truly synthesizes Kentucky contract principles or simply exists as a categorical rule to ensure that insureds always recover." Id. at 592.

The bus occupants argue this issue was not preserved because it was not presented to the trial court. Because we are not deciding the argument on its merits, we do not address the preservation issue.